NAZARETH M. HAYSBERT [CA SBN 294431]
  nazareth@haysbertmoultrielaw.com
JAMES L. MOULTRIE III [CA SBN 296805]
  james@haysbertmoultrielaw.com
**HAYSBERT MOULTRIE, LLP**
555 West Fifth Street, Suite 3145
Los Angeles, California 90013
Tel:   (310) 213-7142
Fax:   (310) 424-7140

MORTON SKLAR [*pro hac vice* pending]
  mshumanrights@verizon.net
**STEERING COMMITTEE FOR CAMBODIA**
10800 Keswick Street
Garrett Park, Maryland 20896-0568
Tel:   (301) 946-4649
FAX: (202) 265-7987

Attorneys for Plaintiffs

## UNITED STATED DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEACH SOVANNARA, JAMIE MEACH, individually, and on behalf of themselves and their three minor children, | Case No. |
| Plaintiffs, | **REDACTED COMPLAINT FOR DAMAGES:** |
| v. | (1) Torture Through Arbitrary, Extra-Legal, and Long-Term Detention (28 U.S.C. § 1350 note); |
| HUN MANET, Deputy Chief of Staff of the Royal Cambodian Armed Forces, Vice-Commander of the Prime Minister's Bodyguard Unit, and Director of the Anti-Terrorism Department of the Armed Forces; | (2) Acts of International Terrorism (18 U.S.C. sections 2331, et seq.); |
| | (3) Intentional Infliction of Emotional Distress; |
| and | (4) Assault; |
| | (5) Battery; |
| THE ROYAL KINGDOM OF CAMBODIA, (including but not limited to the Ministry of Interior) | (6) False Imprisonment; |
| | (7) Loss of Consortium. |
| Defendants. | **DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES

# I.

## INTRODUCTION

1.      Plaintiffs Meach Sovannara, Jamie Meach and their three minor children institute this civil action for compensatory and punitive damages against Hun Manet, Deputy Chief of Staff of the Royal Cambodian Armed Forces and head of Cambodia's military and security police, and the Government of the Royal Kingdom of Cambodia (hereinafter "the Cambodian Government").

2.      This action relates to injuries suffered by the Plaintiffs arising out of Defendants' conduct amounting to torture, cruel and inhuman treatment and punishment, crimes against humanity, intentional infliction of emotional distress, assault, battery, and false imprisonment, as a result of the arbitrary and unlawful arrest, prosecution and long-term imprisonment of Plaintiff Meach Sovannara.

3.      Defendants' actions taken against Plaintiff Meach Sovannara and his family were part of a systematic and long-standing campaign of persecution and torture carried out by the Hun Sen government in Cambodia designed to repress and intimidate the civilian population of Cambodia, and to punish and prevent criticism of government actions, and suppress effective political opposition.

# II.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this case pursuant to the provisions of 28 U.S.C. sections 1331 (federal question), note following 28 U.S.C. § 1350 (the Torture Victims Protection Act), as well as 18 U.S.C. section 2333(a) (the Anti-Terrorism Act).

5.      Authorization for this court to exercise jurisdiction over a tort claim against a foreign government, such as the Royal Kingdom of Cambodia, is derived from 28 U.S.C. section 1605(a)(5) excluding foreign sovereign immunity protection in cases "in which money damages are sought against a foreign state for . . . damage . . . occurring in the United States . . . caused by the tortious act or

COMPLAINT FOR DAMAGES

omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment . . .."

6.      Venue is proper in the United States District Court of the Central District of California pursuant to 28 U.S.C. section 1391(b) since the Plaintiffs live in this jurisdiction, the Defendant "is subject to the court's personal jurisdiction with respect to such action," and "there is no district in which an action may otherwise be brought as provided in [section 1391(b)]."

7.      In addition, venue is proper in this district pursuant to 18 U.S.C. section 2334(a), and 18 U.S.C. section 2338, giving federal district courts "exclusive" jurisdiction over actions brought under the anti-terrorism provisions of U.S. law.

8.       This Court also has supplemental jurisdiction over the State of California common law tort claims set out in this Complaint that are related to the federal law claims set out herein, particularly in view of the provisions of 18 U.S.C. section 2340B, noting that the application of State and local laws and legal remedies are not precluded by the grant of exclusive federal jurisdiction to matters arising under the anti-terrorism and anti-torture statutes.

## III.

## PARTIES

9.      Plaintiff Meach Sovannara is a naturalized citizen of the United States and also is a citizen of Cambodia.  He is a resident of Long Beach, California, and also is the husband of Plaintiff Jamie Meach, and father of the three minor children who also are Plaintiffs in this case.  He is suing in his individual capacity, and also as father of his three minor children who are Plaintiffs in this case.

10.      Plaintiff Jamie Meach is a naturalized citizen of the United States and also a citizen of Cambodia.  She is a resident of Long Beach, California, and also is the wife of Plaintiff Meach Sovannara, and mother of the three minor children

COMPLAINT FOR DAMAGES

who also are Plaintiffs in this case.  She is suing in her individual capacity, and also as mother, guardian and principal legal representative in the United States of her three children who are also Plaintiffs in this case, and principal legal representative of her husband, Plaintiff Meach Sovannara, who is imprisoned in Cambodia.

11.     Plaintiffs S.M., J.M., and S.M. are the minor children of Plaintiffs Meach Sovannara and Jamie Meach, and are citizens and residents of the United States and currently reside with Plaintiff Jamie Meach in Long Beach, California.

12.     Defendant Hun Manet is a Cambodian national and currently resides in Cambodia, though he also has been a long-term resident of the United States when he attended West Point Military Academy, graduating in May of 1999.  Hun Manet is the eldest son of Prime Minister Hun Sen, and has several official roles in the government, including Deputy Chief of Staff of the Royal Cambodian Armed Forces, Vice-Commander of the Prime Minister's Personal Bodyguard Unit, and director of military police and security forces.  It was in Hun Manet's official capacities, and under his authority and jurisdiction and control, that the acts of torture against Plaintiff Meach Sovannara that are the subject of this lawsuit took place.

13.     The military and security forces that Defendant Hun Manet heads were principally involved in maintaining order at the political demonstration in Freedom Park on July 15, 2014, the attacks that were directed against the civilian demonstrators at that protest event, and the arrests of Plaintiff Meach Sovannara and other high level members of the political party that were involved in organizing and leading the protest demonstration.  They also were responsible for filing the criminal charges placed against Plaintiff Meach Sovannara that led to his arrest, prosecution and long-term imprisonment.

14.     Defendant Hun Manet, in his capacity as director of all military police and national security forces, supervises, controls and exercises command

responsibility over the personnel responsible for the arrest and incarceration of Plaintiff Meach Sovannara.

15.     Defendant Hun Manet's close personal and family ties with his father Hun Sen, and the supervisory responsibilities given to him by his father the Prime Minister, have placed him in the position of being one of the principal advisors in the Cambodian government that ultimately decide all major questions and policies related to how members of the political opposition are treated, including whether and how the criminal and judicial processes will be used against them as an integral part of the government's systematic policy of repression and punishment of its critics.  He played a major role in the decision to use military and security forces to suppress and attack civilian protesters at the July 15, 2014 Freedom Park demonstration that Plaintiff Meach Sovannara participated in and helped to organize and lead.

16.     Defendant the Royal Kingdom of Cambodia ("the Government of Cambodia") is a foreign sovereign government.  The Government of Cambodia is also a named Defendant in this case by virtue of the fact that Defendant Hun Manet, and other high level officials, departments and instrumentalities of the government, acting in their official capacities and under color of law, directly planned, organized, participated in, and were responsible for the tortious actions committed against Plaintiffs Meach Sovannara, Jamie Meach, and their minor children.

17.     In particular, in addition to the actions of Defendant Hun Manet described above, other officials of the government at the highest levels in the Ministries of Defense, Justice and Interior, among others, played a major role in the arbitrary arrest of Meach Sovannara, his unlawful prosecution and conviction, and his long-term incarceration on trumped up charges of insurrection against the state.

COMPLAINT FOR DAMAGES

18.     These actions by the government took place with the knowledge, acquiescence and approval, and under the command responsibility, of high level officials of the Ministry of Defense, Justice and Interior, as part of a larger strategy and policy of seeking to intimidate, disrupt and punish the efforts of the political opposition to organize an effective political voice against the policies and actions of the Hun Sen government.

19.     These repressive policies and actions included the arbitrary arrest and criminal prosecution of those, like Plaintiff Meach Sovannara, who engaged in protest activities, the physical assault and vicious beatings of members of Parliament and members of the political opposition, such as Nhay Chamroeun and Kong Sophea, and threats of unfounded criminal and other judicial actions against Sam Rainsy and other leaders of the political opposition and critics of the government.

20.     These actions by the government also specifically include, for example, actions by the Ministry of Interior, which administers the national police that along with its military counterparts participated in attacks upon, and arrests of, demonstrators at the protest rally that Plaintiff Meach Sovannara participated in and helped to organize at Freedom Park on July 15, 2014, which was the demonstration that was used as the basis for his arrest and criminal prosecution for "insurrection."  The Ministry of Interior also administers the national prison system, including the Prey Sar Prison where Plaintiff Meach Sovannara currently is being incarcerated for his twenty-year prison term.

21.     The Defendant government of Cambodia cannot invoke the privilege of foreign sovereign immunity in the present action before this Court, because it falls under one of the specific exceptions adopted by the Congress of the United States in the Foreign Sovereign Immunities Act, 18 U.S.C. section 1605 et seq., namely section 1605(a)(5) which permits tort actions against foreign governments to be filed in U.S. court for "damages … occurring in the United States and caused

by the tortious act or omission of that foreign state or of any official … while acting within the scope of his office or employment ….”

22.     The FSIA statute recognizes, and provides exceptions to the invocation of a foreign sovereign immunity defense, for other situations where the offending action takes place abroad, but produces negative impacts within the U.S. For example, section 1605(a)(2) indicates that commercial activities or acts carried out by a foreign government “outside the territory of the United States … that causes a direct effect in the United States,” are not subject to foreign sovereign immunity protection.

## IV.
## FACTUAL ALLEGATIONS

### A.   The Violence, Repression and Corruption of Hun Sen in Cambodia

23.     The government of Hun Sen’s ruling Cambodian People’s Party (CPP), has been exercising brutally repressive power for over thirty years.

24.     For over the thirty-year period that the Hun Sun government and his CPP party have been in control, they have engaged in a systematic, violent and highly repressive set of policies and practices designed to prevent effective and meaningful political opposition from exercising their political and free speech and free association rights.

25.     This systematic policy of repression and violent suppression of critics of the government includes tactics that closely follow the pattern used against the Plaintiffs in this case, featuring violent attacks on members of the political opposition, and misuse of the criminal justice system and the courts to intimidate and punish those seeking to speak out against the government through unjustified, arbitrary and unlawful criminal prosecution and imprisonment.

26.     Well respected international monitoring groups like Human Rights Watch, and the Justice Initiative of the Open Society Institute, as well as independent international observers such as the United Nations’ Special

COMPLAINT FOR DAMAGES

Rapporteur for Human Rights in Cambodia, have regularly reported on, and condemned, the systematic practice of the Hun Sen government to place unjustified criminal charges against protesters and leaders of the political opposition in order to prevent them from mounting effective opposition efforts, and to punish them for their efforts to do so.

27. Further strong evidence of how the Hun Sen government uses the courts and the judicial process for its own political purposes comes from the efforts that have been made to interfere with and stop investigations and prosecutions of the Khmer Rouge genocide atrocities of the 1970s by the internationally established Khmer Rouge Tribunal (the Extraordinary Chambers in the Courts of Cambodia).

28. Hun Sen in a personal meeting with United Nations Secretary General Ban Ki-Moon warned him that additional investigations and prosecutions by the Khmer Rouge Tribunal would not be permitted by his government, and Hun Sen followed up on this warning by forcing the resignation of the international judges that had been appointed to the Tribunal, and by manipulating the Cambodia judges and prosecutors assigned to the Tribunal to prevent the bringing of cases.

29. These are the same type of methods used by the Hun Sen government to misuse the Cambodia law enforcement system and judicial process to imprison and intimidate leaders of the political opposition, as was done with (in the words of Amnesty International) the "trumped up and politically motivated charges," and conviction of Plaintiff Meach Sovannara.

30. The most recent example of how the government has manipulated the criminal justice and judicial processes to repress and punish government critics was the filing of criminal charges on February 5, 2016 of "threatening to cause destruction" and "defacement or damage to property" against Alex Gonzales and two other members of the Cambodian environmental group Mother Nature.

COMPLAINT FOR DAMAGES

Gonzales previously had been forced into exile by the government when his visitor's visa was not renewed in response to his protests against sand dredging, logging and other activities causing damage to the environment.

31.     Another recent indicator of how the government controls the judicial process and uses the courts for its own political purposes in violation of rule of law standards was the posting of a message by Prime Minister Hun Sen on his Facebook account "ordering" a local court to release from prison two women who were arrested a week earlier "for allegedly breaching a court order related to an ongoing land dispute" involving an unlawful land eviction that they were protesting.

32.     Hun Sen sent his two sons to the jail to enforce his "order," indicating that the prosecutor should "detain my sons instead of them" so that the two women would be released.  The Cambodia Daily reported that Hun Sen's actions, "further compromised the independence of the judiciary" and indicated how thoroughly the courts operated at the behest of government leaders, despite Hun Sen's assurances to President Obama in a meeting in November 2012 that he could not secure the release of jailed political opposition leaders, because was not "in control of the courts."

33.     Still another indicator of how the government of Cambodia interferes with the independence of the judicial system and controls and manipulates the actions of the courts for political purposes was the issuance by Prime Minister Hun Sen of an order to "provincial authorities in Banteay Meanchey to disregard a ruling by the Supreme Court."

34.     According to the Phnom Penh Post's front page coverage of the story, this was just "the latest case of public intervention in court matters" by the government, as Hun Sen personally countermanded a Supreme Court decision that awarded property in a land dispute to its long time former occupants, over claims

COMPLAINT FOR DAMAGES

that had been made to the property by "five soldiers and their kin" with the support of the Prime Minister's political party.

35.     A spokesperson for ADHOC, one the leading groups in Cambodia defending the rights of land owners against improper land evictions by the government, is quoted as saying, "There is no rule of law in this country … the rule of law is what comes out of his [Hun Sen's] mouth."

36.     Similar tactics involving the misuse and manipulation of the judicial system by the government for political purposes have been employed on several occasions against the leader of the political opposition, Sam Rainsy, who has been arrested and forced into exile on least two other occasions when criminal charges were placed against him for his political activities.

37.     Sam Rainsy currently is in forced exile after criminal charges of defamation were placed against him by Cambodia's Minister of Foreign Affairs, Hor Nom Hong, based on public criticism that Sam Rainsy voiced against the actions of Hor Nom Hong, citing his role in assisting in the administration of a death camp during the period of the Khmer Rouge genocide atrocities in the 1970s.

38.     Threats that additional criminal defamation charges would be placed against Sam Rainsy to make it even harder for him to return to Cambodia recently were reported, including new criminal charges that were place against him in Phnom Penh Municipal Court as recently as March 31, 2016, "Adding more weight to the slew of legal cases hanging over the CNRP president's head."

39.     Senator Hong Sok Hour has been arrested on charges of "inciting chaos in society," using similar tactics.

40.     Along similar lines, in recent months, two very detailed complaints have been filed by victims of the Hun Sen government's highly abusive practices with the International Criminal Court, providing extensive details and documentation indicating how the Hun Sen government has used physical assaults

COMPLAINT FOR DAMAGES

against its citizens and misuse and manipulation of the criminal justice system to harshly suppress political criticism and opposition, and to main its strict control in effect.

41.     In particular, the complaint in ICC Case Number OTP-CR-115/14, dated 24 March 2014, notes that the Hun Sen government's practice of misusing the law enforcement and judicial systems to harshly suppress criticism and political opposition has been taken to such extremes so as to include efforts to control and shut down the investigative and prosecution activities of the international court, the Khmer Rouge Tribunal, that was established with the assistance and cooperation of the United Nations to deal with the genocide atrocities committed many years ago in Cambodia by the Khmer Rouge.

42.     These efforts have included threats by Prime Minister Hun Sen that were delivered by Hun Sen at an in-person meeting with Ban Ki-moon, Secretary General of the U.N., that he would not allow the Tribunal to file new cases.  They also included pressures that forced the resignation of several international judges who were attempting to move the Tribunal's investigations and prosecutions forward.

43.     While these efforts to control and interfere with an international criminal court are not directly tied to the situations of the Plaintiffs in the present case before this court, they indicate the lengths and methods that the Hun Sen government will employ to stifle threats to its ability to remain in power, and to prevent criticism and opposition of its policies and practices.

44.     Further evidence that the government of Cambodia uses, controls and manipulates the law enforcement and judicial systems for political purpose, and that Prime Minister Hun Sen and his high level government officials dictate, control and interfere with the independence of the courts on a regular and systematic basis, is provided by two recent incidents where Hun Sen essentially

reversed the decisions of first a local court, and then even the Supreme Court of Cambodia, on his own volition and  for his own political reasons.

45.     On March 24, 2016 Hun Sen, in what the Phnom Penh Post referred to as the latest development in his "recent contretemps with the Cambodia court system," ordered "provincial authorities in Baneay Meanchey to disregard a ruling by the Supreme Court" that the government felt was improper.  The Phnom Penh Post article called Hun Sen's latest interference with the presumed independence of judicial process the "logical apex" of his policy of controlling the courts for political purposes.

**B.     The Arbitrary and Extra-Legal Arrest, Prosecution and Imprisonment of Plaintiff Meach Sovannara**

46.     In the aftermath of the Cambodian national elections held on July 28, 2013, the CPP engaged in a violent crackdown on worker rights protests, land eviction demonstrations, and protests related to the manipulation and stealing of the national election by Hun Sen's CPP party.

47.     Widespread election fraud and manipulation by the CPP, and the Hun Sen government and their supporters, was widely attested to by international election observers and human rights groups, with numerous reports and findings that the elections had been rigged and fraudulently stolen by Hun Sen and his ruling CPP party in order to maintain their power in office.

48.     Part of the opposition protest activities challenging the fairness and validity of the election included a demonstration organized and led by the opposition Cambodia National Rescue Party (CNRP) and opposition party lawmakers on July 15, 2014 and held at Freedom Park ("the Freedom Park Demonstration"), the park close to the National Assembly building in Cambodia's capitol of Phnom Penh that has traditionally been used as the cite of political meetings and demonstrations.

49.     Plaintiff Meach Sovannara was present at the Freedom Park demonstration in his capacity as Media Director and chief spokesperson for the CNRP opposition party, and his subsequent arrest, prosecution and long-term incarceration was based on his participation in that protest demonstration.

50.     On November 11, 2014, Plaintiff Meach Sovannara was arrested, charged and jailed in connection with his participation at the July 15, 2014 Freedom Park protest demonstration.  He was formally charged with three crimes at the Phnom Penh Municipal Court, including the charge of "leading an insurrection," which carries a potential decades-long prison sentence.

51.     The criminal trial of Plaintiff Meach Sovannara on these charges was universally condemned by Human Rights Watch and other international observers as a "show trial" before a "kangaroo court" that denied him basic due process rights, including failure to allow him to be properly represented by his legal counsel.

52.     For example, the leading Cambodian human rights organization LICADHO charged that the proceeding "was a show trial with a predetermined ending," and noted that Plaintiff Meach Sovannara's lawyers were not even allowed to attend the closing arguments at the trial.  Amnesty International's research director for Southeast Asia, Rupert Abbot, agreed that the "trial lacked the most basic fair trial guarantees … [and] should be overturned."

53.     As a result of that politically motivated show trial, on July 21, 2015 Plaintiff Meach Sovannara was convicted and sentenced on the insurrection charges along with ten other opposition party leaders.  He received a prison term of 20 years to be served at the notorious Prey Sar prison, which the Cambodian government has used for many years as a site for incarcerating and torturing its critics under very harsh and inhuman conditions.

54.      Plaintiff Meach Sovannara has been imprisoned in Prey Sar prison since that time, suffering very harsh, severe and violent treatment that has

COMPLAINT FOR DAMAGES

seriously and adversely affected his health and his well-being, and that has endangered his life, as will be detailed and documented at trial.

55.     Plaintiff Meach Sovannara's wife, Plaintiff Jamie Meach, and their three minor children (who are also Plaintiffs in this action), live in the Long Beach, California area, and have suffered major financial and emotional damages as a result of the imprisonment and harsh treatment of their husband and father, as will be detailed and documented at trial, including substantial loss of financial support, the resulting loss of their family home, and being forced to live under very difficult circumstances as a result of the enforced absence of their husband and father, and the loss of his companionship and support.

56.     U.S. Secretary of State John Kerry is reported to have personally protested the imprisonment of Plaintiff Meach Sovannara and other leaders of the political opposition party to Cambodian Prime Minister Hun Sen when he met with him in Phnom Penh on January 26, 2016, and to have requested that Plaintiff Meach Sovannara and other political prisoners be released from prison.

57.     Amnesty International has issued three separate Urgent Action Alerts on behalf of Plaintiff Meach Sovannara indicating that he and the other ten imprisoned members of the political opposition sentenced for insurrection because of their protest activities in Freedom Park on July 15, 2014 were prisoners of conscience:

            a.     Their Urgent Action Alert of 15 August 2014 focused on his arrest and the placing of criminal charges against him for the exercise of his free speech and free association rights;

            b.     Their Urgent Action Alert of 18 December 2014 dealt with his unfair trial;

            c.     Their Urgent Action Alert of 29 July 2015 protested his unfair trial and conviction on trumped up and politically motivated

COMPLAINT FOR DAMAGES

charges," and called for his release from imprisonment and the overturning of his arbitrary and unlawful conviction.

58.    The arrest, criminal prosecution and imprisonment of Plaintiff Meach Sovannara were carried out as part of that systematic and ongoing method of harsh political repression and intimidation through misuse and control of the judicial and law enforcement processes in Cambodia, and through the use of police and security personnel controlled by the government.

## C.    Treatment of Plaintiff Meach Sovannara Constitutes Torture and Meets the Definitions of "Violent Acts" and "Acts Dangerous to Human Life."

59.    As noted above, the arbitrary criminal arrest and long-term confinement of Plaintiff Meach Sovannara, together with the harsh conditions of his imprisonment in Prey Sar prison, meet the definition of "torture" under U.S. and international law.  As such, they also meet the definitions of "violent acts" and "acts dangerous to human life" that bring them under the provisions of 18 U.S.C. sections 2331, et seq., authorizing tort damage actions by U.S. citizens subjected to this treatment while abroad.

60.    Because the arrest, trial, conviction and imprisonment of Plaintiff Meach Sovannara were of an arbitrary and extra-legal nature, even though they were carried out by government officials acting in their official capacities and under color of law, and most especially given the heinous nature of these actions that meet the definition of "torture" under U.S. and international law,  the officials responsible for these arbitrary and unlawful actions do not have any legally recognized basis for claiming immunity for their actions.

61.    Under provisions of U.S. law, notably the statutes and regulations implementing the Convention Against Torture, a treaty that the U.S. has ratified and by which is legally bound, as well as court jurisprudence interpreting and applying anti-torture laws and treaty obligations, long-term arbitrary detention of

the type that Plaintiff Meach Sovannara has been subjected to by the government of Cambodia  constitutes "torture" as that term is defined in the Convention Against Torture and U.S. statutes and regulations.

62.     Prey Sar prison, where Plaintiff Meach Sovannara is incarcerated, is renowned for its harsh treatment of prisoners.

63.     According to reliable reports, 22 inmates are housed in single jail cells measuring 17 square meters (183 square feet or about 9 feet by 9 feet), with little or no ventilation, and no windows.

64.     Virtually no visitors are allowed, and even basic and necessary items, such as water, must be "purchased" through payments made by the inmates, through the assistance provided by friends and family.

65.     There have been numerous reports of physical torture and mistreatment of prisoners, especially those that fail to provide regular payments to the guards.

66.     There have been reports that Plaintiff Meach Sovannara has been subjected to dangerous and damaging treatment in Prey Sar prison causing physical illness, and presenting a threat to his life and well-being.

67.     The Convention Against Torture, and the U.S. statute and regulations implementing the CAT treaty and dealing with torture related offenses, define torture as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering … upon another person within his custody or physical control."  (18 U.S.C. section 2340 (1).)

68.     The treatment of Plaintiff Meach Sovannara at the hands of Defendant Hun Manet, and his subordinates acting under his command authority and subject to his supervision and control, meet this definition.

69.      The treatment of Plaintiff Meach Sovannara also meets the definition of "international terrorism" as that term is used and defined in 18 U.S.C. section 2331, et seq., authorizing civil actions by victims in U.S. courts.  Section 2332(1)

COMPLAINT FOR DAMAGES

defines the term "international terrorism" to mean "violent acts or acts dangerous to human life that are in violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State."

70.     Since acts of torture are made subject to criminal sanctions under 18 U.S.C. section 2340A, and also are defined as covering the type of treatment that Plaintiff Meach Sovanarra has been subject to by Defendant Hun Manet and his subordinates, they come under the definition of "international terrorism" and under the provisions of 18 U.S.C. section 2331, et seq., as described above.

## D.    Defendants' Actions Were Intended to Intimidate A Civilian Population

71.     As Human Rights Watch and other highly respected, independent human rights organizations have found, the pattern and practice of repression and punishment of those criticizing the government or taking part in political opposition activities are part of a long-standing and systematic effort to intimidate the population of Cambodia, and to prevent meaningful political opposition from becoming organized and taking place.

72.     The fact that these same types of tactics have been, and currently are being used against the leader of the political opposition, Sam Raisy, a principal advocate of environmental protection, Alex Gonzales of the group Mother Nature, other leaders of the political opposition party, and supporters of worker rights groups and those protesting unlawful and uncompensated land  evictions, are further indications of the deep-seated and widespread nature of the policy of repression and intimidation that is applied by the Hun Sen government on a systematic basis.

73.     Additional evidence of the extensive and systematic nature of the Hun Sen government's intimidation policies can be found in the two complaints

COMPLAINT FOR DAMAGES

submitted to the International Criminal Court citing a series of actions by the Hun Sen government that amount to genocide and crimes against humanity against the people of Cambodia.  (See ICC Case Number:  OTP-CR-115/14, filed on March 17, 2014, focusing on the issues of genocide and repression of worker rights advocates, and the related case filed with the ICC on October 7, 2014 by the group Global Diligence, focusing on repression of those protesting widespread, unlawful land evictions.  Both these cases still are pending, and are being investigated by the Prosecutor's Office of the ICC.).

**E.     Defendant Hun Manet's Role in the Torture and Violence Committed Against Plaintiff Meach Sovannara and His Family**

74.     Defendant Hun Manet has played a principal role in the torture and violence committed against Plaintiff Meach Sovannara and his family, and more generally in the systematic policies and practices of repression and intimidation carried out by the Hun Sen government against the Cambodian people.

75.     As Hun Sen's eldest son, and the presumptive next leader of his father's political party, and heir to his political heritage, Defendant Hun Manet has been given unique responsibility and authority in his father's government.

76.     He operates as a principal advisor to his father and other key government officials, and is in the "inner circle" of those making key governmental decisions, including those related to the treatment of protesters and government critics, and members of the political opposition party, such as Plaintiff Meach Sovannara.

77.     To assist him in carrying out these decision-making and leadership functions for the Hun Sen government, Defendant Hun Manet, despite his relatively young age of 39, has been made a Lieutenant General and one of the highest ranking members of Cambodia's military leadership staff.

COMPLAINT FOR DAMAGES

78.     One of his principal responsibilities is to serve as deputy commander of Hun Sen's Personal Bodyguard Unit, the elite Military Police corps that is directly under the command and authority of the Prime Minister's office.

79.     That unit, under the direct and personal command of Hun Sen and his son Defendant Hun Manet, has been implicated by the U.S. Federal Bureau of Investigation as participating in past major assaults against civilian protesters and participants in political opposition activities.

80.     Most recently, three members of Hun Sen's Personal Bodyguard Unit were named as leaders of a brutal physical attack on two members of the opposition political party who are elected and sitting members of the National Assembly as they were leaving the Parliament building.

81.     Previously, in 1997, a team of FBI investigators, in a report published by the U.S. Congress, found that Hun Sen's Bodyguard Unit played a major role in a grenade attack on a peaceful public rally of the political opposition party being held in Freedom Park, resulting in 16 deaths and the wounding of over a hundred others, including American Ron Abney.

82.     The FBI conducted a field investigation of the 1997 grenade attack because American Ron Abney was among the victims.

83.     Defendant Hun Manet also serves as head of all military police and national security units, including those that have been widely implicated in carrying out armed attacks against worker rights demonstrators, land eviction protesters, and those engaging in demonstrations against the Hun Sen government's tactics involving the national elections of 2013.

84.     It was one of these post-election protests held in Freedom Park on July 15, 2014 that provided the backdrop for the criminal charges brought against Plaintiff Meach Sovannara, that led to his arbitrary arrest and imprisonment, and the torture that was committed against him.

COMPLAINT FOR DAMAGES

85.     Defendant Hun Manet exercised supervisory authority and command responsibility over the police and national security officers that monitored and patrolled that demonstration, and that gathered the evidence that was  used against Plaintiff Meach Sovannara in the criminal prosecution that resulted in his current arbitrary and long-term incarceration, amounting to torture.

**F.     Impacts of Defendant Hun Manet's Actions on Plaintiff Jamie Meach, and on Her and Her Husband Meach Sovannara's Three Minor Children**

86.     Since the arbitrary arrest and imprisonment of her husband, Plaintiff Meach Sovannara, on November 10, 2015, Plaintiff Jamie Meach and her three minor children with Plaintiff Meach Sovannara have suffered major damages and torts here in the United States that are immediately and directly attributable to the Cambodian government's arbitrary arrest and torture of their husband and father.

87.     They have been unable to receive any income or financial support from Plaintiff Meach Sovannara since his arbitrary arrest and incarceration, and as a result have lost their family home in Long Beach and have been forced to live with friends in very crowded and difficult conditions.

88.     Not only have they lost the financial support and income normally provided by Plaintiff Meach Sovannara, but they have been forced to send what little funds that they have and that they have been able to obtain back to Cambodia in order to pay for basic items such as food and water to be provided to Plaintiff Meach Sovannara, since it is common practice in Cambodian prisons, and most especially in the Prey Sar Prison where Plaintiff Meach Sovannara and other political prisoners are held, for prisoners to have be pay for receipt of basic provisions such as food, water and other necessities.

89.     Moreover, the extremely unusual physical and mental demands that have been placed on Plaintiff Jamie Meach and her children in their husband's and father's absence, and especially given the nature of the reasons why he has been

forcibly separated from his family, have made it very difficult for Plaintiff Jamie Meach to carry out the work she has been doing as a journalist in the Long Beach area, and to maintain the income that she has been able to generate in the past from this work.

90.     Plaintiff Jamie Meach also has suffered extreme adverse impacts, including physical and emotional distress, from being denied the companionship and consortium of her husband Plaintiff Meach Sovannara, and experiencing her husband's mistreatment and torture related to his arbitrary and unlawful arrest, prosecution, long-term incarceration and torture.  She has been ostracized by other members of her community, and has experienced severe, long-term emotional and physical distress.  Her three minor children have been subjected to similar adverse impacts, including severe physical and emotional distress, from being denied the companionship, care and love of their father.

91.     The nature and extent of the losses, injuries and damages suffered by Plaintiffs Jamie Meach and her three minor children as a result of Plaintiff Meach Sovannara's arbitrary incarceration and torture in Cambodia will be identified and described in detail at trial.

**G.   The Defendants Are Liable To Plaintiffs**

92.     The arbitrary and extra-legal arrest, prosecution and long-term incarceration of Plaintiff Meach Sovannara, constitutes criminal violations of both international law and U.S. law, and meet the definitions of torture under both sets of standards.

93.     Defendant Hun Manet, with the assistance and collaboration of other officials of the government of Cambodia at the highest levels, played a principal part in the planning, supervision and carrying out of the actions and violations alleged that were committed against the Plaintiffs.  These actions and violations

COMPLAINT FOR DAMAGES

were carried out under their supervision and control, and under their actual or apparent authority, with their consent or acquiescence, and under color of law.

94.     Defendant Hun Manet and other high level officials of the Cambodian government knew, had reason to know, and/or owing to the circumstances involved should have known that subordinates were planning to commit, and did commit, the actions and violations alleged, and they either approved of these actions and/or failed to prevent the abuses or to punish those responsible.

95.     The injuries and damages inflicted upon the Plaintiffs were not incidental to sanctions permitted or carried out pursuant to law as that term is applied and interpreted in both international and domestic jurisprudence, since the actions taken against the Plaintiffs by law enforcement and judicial officials were arbitrary and unlawful in nature, and were carried out for political, not legal reasons, even though they may have taken place under color of law.

96.     As a result of the acts and omissions of the Defendants described above, and given the highly arbitrary, deliberate, wanton, malicious and oppressive nature of these actions, they should be punished by an award of both actual and punitive damages for the Plaintiffs, in amounts to be determined at trial.

97.     Under the provisions of U.S. laws applicable to the circumstances of this case, and as described herein, the Plaintiffs also are entitled to an award of court costs and legal fees, in amounts to be determined at trial.

98.     Any exhaustion or local remedy relief requirements that might be considered in cases of this type where the injuries and actions involved took place in a foreign nation should not be applied because ample and well documented evidence exists that any efforts to obtain such remedies under the laws and institutions of Cambodia would be futile, especially since the actions alleged took place under the authority of the government of Cambodia, and are part of a long-standing and consistent pattern and practice of that government to use the tactics

COMPLAINT FOR DAMAGES

alleged, under color of law, to repress criticism and political opposition, and to deny basic international human rights to their citizens.

99.     The named Defendants have been properly served under the process of this Court pursuant to the requirements of U.S. law, and thereby are subject to the exercise of the jurisdiction of this Court for the purposes of consideration of the causes of action alleged in this Complaint, as authorized under the specifically enumerated provisions of U.S. law relied upon in this Complaint.

## CLAIMS FOR RELIEF

**First Claim for Relief**
**Torture Through Arbitrary, Extra-Legal, Long-Term Detention**
**Under the Torture Victims Protection Act**
**(All Plaintiffs Against All Defendants)**

100.     Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth herein.

101.     Through the actions of Defendants Hun Manet and the Government of Cambodia, Plaintiff Meach Sovannara was arrested, subjected to criminal prosecution, and also subjected to long-term incarceration for a sentencing period of 20 years.  Thus far he has served seven months of that sentence in infamous Prey Sar prison in Cambodia, and currently remains as a prisoner in that facility, being subjected on an ongoing basis to conditions of treatment that are cruel, inhuman and life threatening, and that meet the definition of torture under U.S. and international law.

102.     Plaintiff Meach Sovannara's arbitrary arrest, criminal prosecution, sentencing and incarceration constitute torture under the terms of the Torture Victims Protection Act, Pub. L. No. 102-256, 106 Stat. 73 (1992), codified at 28 U.S.C. section 1350 note, and as defined under numerous universally accepted international human rights law standards, including those adopted by the United States Congress in statutory provisions implementing the Convention Against Torture, ratified by the United States on 21 October 1994, and implemented by

Congressional legislation making torture a crime subject to prosecution in U.S. courts.  See 18 U.S.C. section 2340A, and implementing regulations at 8 C.F.R. 208.18.

103.    Plaintiff Meach Sovannara's arbitrary arrest, criminal prosecution, sentencing and incarceration, although they were authorized and carried out under the apparent authority of Cambodian law enforcement and judicial officials and institutions, acting in their official capacities and  under the color of law, constitute torture under U.S. and international law because these actions were unlawful under universally recognized human rights standards, were heavily influenced and controlled by the Hun Sen government for political reasons, and were not carried out on an independent, lawful manner, based on due process standards, as has been attested to and well-documented by numerous highly respected human rights groups and observers.

104.    U.S. law exempts from the definition of torture "judicially imposed sanctions and other enforcement actions authorized by law."  But to meet the "lawfully imposed sanctions" definition, the actions involved must meet international human rights standards.  The actions of the Cambodian government in arresting Plaintiff Meach Sovannara for the peaceful exercise of his free speech and free association rights, and in imposing a 20-year prison sentence on Plaintiff Meach Sovannara for political reasons, and without adherence to due process criteria, do not meet the "lawfully imposed sanctions" standards.

105.    Defendant Hun Manet, in his capacity as director of the security forces of the government of the government of Cambodia that were responsible for maintaining order at the demonstration where Plaintiff Meach Sovannara and other demonstrators were attacked and arrested, directed, oversaw and ordered the arrest and incarceration of Plaintiff Meach Sovannara, and was generally responsible for, and exercised command responsibility over the actions that led to the Plaintiff's arbitrary arrest and long-term incarceration.

106.     Defendant Hun Manet carried out these arbitrary, unlawful and extra-legal actions to the harm and detriment of Plaintiff Meach Sovannara, and Plaintiffs Jamie Meach and her three minor children, pursuant to a long-standing and systematic policy of the Hun Sen government to brutally suppress criticism and public demonstrations of disapproval by those politically opposed to the policies and practices of the highly autocratic Hun Sen regime.

107.     Defendant Hun Manet knew, or should have known, that these actions were unlawful and extra-legal in nature, and that they constituted torture and/or inhuman treatment or punishment under universally recognized international human rights legal standards.

108.     Defendant Hun Manet, as the supervisory authority, and as commander of the security forces that committed these abuses, failed to act to prevent the abuses from taking place, and failed to punish those responsible for the abuses, thereby condoning, ratifying and adopting this conduct as his own.

109.     As a result of the arbitrary and extra-legal arrest, criminal prosecution and long-term incarceration of Plaintiff Meach Sovannara, he suffered, and continues to suffer, severe physical and psychological damages, loss of income, and other financial, physical and emotional losses that will be more fully described, documented and determined at trial.

110.     The actions and omissions of Defendants Hun Manet and the government of Cambodia were deliberate, willful, intentional, wanton, malicious and oppressive, and were carried out pursuant to a deliberate and long-standing policy and practice of repression and punishment for the exercise of rights of free expression and association protected by a number of universally accepted and recognized international law standards, and should be punished by an award of both actual and punitive damages in amounts to be determined at trial.

111.     Plaintiff Jamie Meach is the wife of Plaintiff Meach Sovannara. They have been married since February 28, 1999.  They have three minor

children: S.M., born April 13; J.M., born January 23; and S.M., born August 22. The family resides in Long Beach, California.   Plaintiffs Jamie Meach and Meach Sovannara and their children are citizens and residents of the United States.

112.     As a result of the arbitrary and extra-legal arrest, prosecution and long-term detention of their husband and father, amounting to acts of torture under international and U.S. law that Plaintiff Meach Sovannara has been subjected to by the Defendants, Plaintiffs Jamie Meach and her children likewise have suffered a number of significant injuries and damages taking place here in the U.S. as a result of the Defendants' acts of torture.  The nature and extent of these damages will be determined at trial.  These include, but are not limited to, severe financial hardship that these Plaintiffs have experienced as a result of being deprived of Plaintiff Meach Sovannara's regular and usual level of financial support and contributions, since he has not been in a position to receive his normal salary and income, and to contribute the regular financial support that he normally provides to his family, since his arrest and detention.

113.     In addition, because of this significant loss of income and financial support from their husband and father over an extended period of time, Plaintiffs Jamie Meach and the three minor children of Jamie Meach and Meach Sovannara have been forced to vacate the home in Long Beach, California that they resided in for a number of years, and move to much smaller and less expensive quarters, including periods of time when they were forced to live with friends in very cramped and inadequate conditions, without being able to pay any rent at all.  In essence, they were made homeless and forced to receive the charity of others in order to have a place to live, as a direct and immediate result of the tortious actions that the government of Cambodia carried out against Plaintiff Meach Sovannara and his family.  This course of events has caused considerable difficulty and distress to all the members of the family, and has made their life very difficult as a practical matter.

COMPLAINT FOR DAMAGES

114.    These very difficult living and economic situations, along with the additional psychological and emotional difficulties of having to live without their husband and father as a result of the acts of torture committed by the Defendants, have caused serious and extensive damages to the Plaintiffs, the detailed nature and extent of which will be determined at trial.

115.    Additional forms of injuries and damages that Plaintiffs Jamie Meach and her three minor children have experienced and suffered as a result of being arbitrarily and unlawfully deprived of their husband and father through the acts of torture by the Defendants, will be identified and described in detail at trial.

116.    The actions and omissions of Defendants Hun Manet and the government of Cambodia were deliberate, willful, intentional, wanton, malicious and oppressive, and were carried out pursuant to a deliberate and long-standing policy and practice of repression and punishment for the exercise of rights of free expression and association protected by a number of universally accepted and recognized international law standards, and should be punished by an award of both actual and punitive damages in amounts to be determined at trial.

### Second Claim for Relief
### Acts of International Terrorism Under, and in
### Violation of, the Anti-Terrorism Act, 18 U.S.C. §§ 2331, et seq.
### (All Plaintiffs Against All Defendants)

117.    Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth herein.

118.    The extra-legal and arbitrary arrest, prosecution and long-term imprisonment of Plaintiff Meach Sovannara fall within the statutory definition of acts of international terrorism as defined by 18 U.S.C. section 2331, et seq., since they consisted of "violent acts or acts dangerous to human life" that were planned and carried out against a citizen of the United States located in a foreign nation, "that are in violation of the criminal laws of the United States or of any

State," and/or would be a criminal violation if committed within the jurisdiction of the United States or of any State," including acts of torture that are in violation of U.S. law, and actions that occurred outside the jurisdiction of the United States that were intended to "intimidate or coerce a civilian population" within the meaning of 18 U.S.C. section 2331, specifically members of the population of Cambodia that are opposed to the policies of the Hun Sen government and/or may wish to protest, criticize or peacefully demonstrate and voice their opposition to those policies.

119. As such, and given their inherent nature, these actions constituted "acts of international terrorism" under the meaning of the statute as defined under 18 U.S.C. sections 2331 and 2333.

120. Defendant Hun Manet conspired and acted together with other Cambodian government officials to arbitrarily arrest, prosecute and secure the long-term imprisonment of Plaintiff Meach Sovannara, with knowledge that he is a citizen of the United States, and with the purpose and intent of setting an example to intimidate the people of Cambodia by demonstrating that opposition to the policies and practices of the Hun Sen government, and participation in demonstrations against those policies, would be harshly punished through extra-legal means.

121. Specifically, Defendant Hun Manet improperly and unlawfully used his official position to direct military, law enforcement and judicial authorities to inflict harsh treatment on Plaintiff Meach Sovannara that amounts to torture under the definition of that term universally accepted and used by the international community under a variety of international instruments, including the Convention Against Torture, and also under U.S. Law and administrative regulations implementing  the Convention Against Torture in the United States, as well as jurisprudence in U.S. courts interpreting and applying anti-torture statutes and standards.  Specifically, 18 U.S.C. section 2340A and implementing regulations at

8 C.F.R. 208.18 make torture committed abroad subject to criminal penalties in United States' courts.

122.     By planning and carrying out these acts amounting to torture and criminal violations of U.S. laws against Plaintiff Meach Sovannara, a U.S. citizen, with the specific purpose of intimidating other members of the Cambodian population who might be similarly situated or inclined as Plaintiff Meach Sovannara to express their opposition and/or criticism to the policies of the Hun Sen government, Defendants violated the provisions of 18 U.S.C. section 2331, 2332b and 2333.

123.     These actions and violations by the Defendants, committed against a U.S. citizen, subjects the Defendants to criminal prosecution in the United States, as well as legal actions by the victims in a U.S. court seeking recovery of damages under 18 U.S.C. section 2333, which authorizes such U.S. victims "injured in his or her person, property, or business by reason of an act" covered by sections 2331 and 2332 to "sue therefore in any appropriate district court of the United States."

124.     The arbitrary and extra-legal arrest, prosecution and long-term imprisonment of Plaintiff Meach Sovannara, constituting acts of international terrorism and torture under the terms of 18 U.S.C. section 2331, et seq., as specifically described in Paragraphs 63 through 68, above, also had very direct and adverse impacts upon the wife and children of Plaintiff Meach Sovannara, causing them serious injuries that were caused directly by the Defendants' actions. Since these family members, as U.S. citizens and residents, also come within the protections of 18 U.S.C. sections 2331, et seq., these Plaintiffs also are entitled to seek and obtain the civil remedies specified in the provisions of that statute.

125.     The nature and extent of the injuries sustained by these Plaintiffs "in his or her person, property, or business by reason of an act of international terrorism" by the Defendants, as defined under the Anti-Terrorism Act, will be identified and determined in detail at trial.

126.   As a direct and proximate result of the acts of international terrorism committed by the Defendants, Plaintiffs were caused severe injuries, including severe pain and suffering associated with torture, pecuniary loss, and loss of income, guidance, parental and familial companionship, loss of consortium, severe, lasting and ongoing emotional distress and mental anguish, and loss of solatium.

127.   Under the terms of 18 U.S.C. section 2333(a), Plaintiffs Meach Sovannara and Jamie Meach and their three minor children are entitled to "recover threefold the damages he or she sustains" and well as "the cost of the suit, including attorney's fees."  These damages and costs will be identified and determined in detail at trial.

128.   The actions and omissions of Defendants Hun Manet and the government of Cambodia were deliberate, willful, intentional, wanton, malicious and oppressive, were salacious and outrageous, and were carried out pursuant to a deliberate and long-standing policy and practice of repression and punishment for the exercise of rights of free expression and association protected by a number of universally accepted and recognized international law standards, and should be punished by an award of both actual and punitive damages in amounts to be determined at trial.

**Third Claim for Relief**
**Intentional Infliction of Emotional Distress**
**(Claims of All Plaintiffs Against All Defendants Under Common Law)**

129.   Plaintiffs incorporate by reference the averments contained in the preceding paragraphs as if fully set forth herein.

130.   Defendants knew that the acts of torture and cruel and inhuman treatment and punishment described herein that were committed against Plaintiff Meach Sovannara would inflict serious and permanent physical and psychological injuries upon him.

COMPLAINT FOR DAMAGES

131.     The conduct of Defendants was undertaken in an intentional manner to injure the Plaintiffs and to cause the contemporaneous and permanent emotional suffering of the immediate family members of Plaintiff Meach Sovannara.

132.     The actions and omissions of Defendants were deliberate, willful, intentional, wanton, malicious and oppressive, and were carried out pursuant to a deliberate and long-standing policy and practice of repression and punishment for the exercise of rights of free expression and association protected by a number of universally accepted and recognized international law standards, and should be punished by an award of both actual and punitive damages in amounts to be determined at trial.

133.     While the actions that were inflicted upon the Plaintiffs were carried out under color of law, they were arbitrary and extra-legal in nature because they constituted violations of universally accepted norms and standards prohibiting acts of torture on an absolute and unconditional basis.  As such, they were unlawful in nature, and under specific provisions of U.S. law. Including the TVPA and the Convention Against Torture and the statute implementing CAT in the U.S., and therefore cannot be claimed to be officially sanctioned and thereby covered by any claim of immunity based on the official position in government held by the Defendants.

134.     As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Defendants caused the Plaintiffs severe mental distress, which has required continuing treatment, which will continue for the balance of Plaintiffs' lives, and they have thereby suffered damages.

135.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will forever in the future suffer severe and permanent emotional distress and anxiety, permanent psychological distress and permanent mental impairment.

COMPLAINT FOR DAMAGES

136.     As a direct and proximate result of the arrest and imprisonment of Plaintiff Meach Sovannara, his immediate family members have been deprived of his society, aid, assistance, services, comfort, and financial support.

137.     The Defendants, by engaging in this unlawful conduct, recklessly and/or intentionally inflicted severe emotional distress upon the Plaintiffs.

138.     Defendants intended to cause Plaintiffs emotional distress; and/or the Defendants acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress.

139.     Defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

140.     As a consequence of Defendants' actions, Plaintiffs have suffered and continue to suffer emotional, psychological, and economic damages.

**Fourth Claim for Relief**
**Assault**
**(Claim of Plaintiff Meach Sovannara Under Common Law)**

141.     Plaintiffs incorporate by reference the averments contained in the preceding paragraphs as if fully set forth herein.

142.     Defendants threatened to arbitrarily arrest and imprison Plaintiff Meach Sovannara in response to Plaintiff Meach Sovannara's participation in the Freedom Park Demonstration.

143.     During the course of his imprisonment in the Prey Sar prison in Cambodia, Plaintiff has been subjected on an ongoing basis to threats of torture and treatment that are cruel, inhuman and life threatening.

144.     At no time did Plaintiff consent to any of the Defendants' threatened conduct.

145.     The actions and omissions of Defendants were deliberate, willful, intentional, wanton, malicious and oppressive, and were carried out pursuant to a deliberate and long-standing policy and practice of repression and punishment for

the exercise of rights of free expression and association protected by a number of universally accepted and recognized international law standards, and should be punished by an award of both actual and punitive damages in amounts to be determined at trial.

146. While the actions that were inflicted upon the Plaintiffs were carried out under color of law, they were arbitrary and extra-legal in nature because they constituted violations of universally accepted norms and standards prohibiting acts of torture on an absolute and unconditional basis. As such, they were unlawful in nature, and under specific provisions of U.S. law. Including the TVPA and the Convention Against Torture and the statute implementing CAT in the U.S., and therefore cannot be claimed to be officially sanctioned and thereby covered by any claim of immunity based on the official position in government held by the Defendants.

147. As a direct and intended consequence of the Defendants' threats, coupled with Defendants' ability to carry them out, Plaintiff Meach Sovannara felt imminent apprehension of arrest, torture, and inhuman treatment, and he therefore suffered emotional distress and other injuries to his person in an amount to be shown according to proof.

148. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will forever in the future suffer severe and permanent emotional distress and anxiety, permanent psychological distress and permanent mental impairment.

149. Defendants' conduct was a substantial factor in causing Plaintiffs' injuries.

150. As a consequence of Defendants' actions, Plaintiffs have suffered and continue to suffer emotional, psychological, and economic damages in an amount to be proven at trial.

**Fifth Claim for Relief**

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Battery
## (Claim of Plaintiff Meach Sovannara Under Common Law)

151.    Plaintiffs incorporate by reference the averments contained in the preceding paragraphs as if fully set forth herein.

152.    Defendants arbitrarily arrested and imprisoned Plaintiff Meach Sovannara in response to Plaintiff Meach Sovannara's participation in the Freedom Park Demonstration.

153.    During the course of his imprisonment in the Prey Sar prison in Cambodia, Plaintiff is subjected on an ongoing basis to conditions of treatment that are cruel, inhuman and life threatening.

154.    At no time did Plaintiff consent to any of the Defendants' conduct.

155.    The actions and omissions of Defendants were deliberate, willful, intentional, wanton, malicious and oppressive, and were carried out pursuant to a deliberate and long-standing policy and practice of repression and punishment for the exercise of rights of free expression and association protected by a number of universally accepted and recognized international law standards, and should be punished by an award of both actual and punitive damages in amounts to be determined at trial.

156.    While the actions that were inflicted upon the Plaintiffs were carried out under color of law, they were arbitrary and extra-legal in nature because they constituted violations of universally accepted norms and standards prohibiting acts of torture on an absolute and unconditional basis.  As such, they were unlawful in nature, and under specific provisions of U.S. law. Including the TVPA and the Convention Against Torture and the statute implementing CAT in the U.S., and therefore cannot be claimed to be officially sanctioned and thereby covered by any claim of immunity based on the official position in government held by the Defendants.

COMPLAINT FOR DAMAGES

157.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will forever in the future suffer severe and permanent emotional distress and anxiety, permanent psychological distress and permanent mental impairment, and physical injuries.

158.    As a consequence of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional, psychological, physical, and economic damages in an amount to be proven at trial.

**Sixth Claim for Relief**
**False Imprisonment**
**(Claim of Plaintiff Meach Sovannara Under Common Law)**

159.    Plaintiffs incorporate by reference the averments contained in the preceding paragraphs as if fully set forth herein.

160.    On November 10, 2015, Defendants arbitrarily arrested and imprisoned Plaintiff Meach Sovannara in response to Plaintiff Meach Sovannara's participation in the Freedom Park demonstration, and Plaintiff is still imprisoned to this day.

161.    At no time did Plaintiff consent to any of Defendants' conduct.

162.    The actions and omissions of Defendants were deliberate, willful, intentional, wanton, malicious and oppressive, and were carried out pursuant to a deliberate and long-standing policy and practice of repression and punishment for the exercise of rights of free expression and association protected by a number of universally accepted and recognized international law standards, and should be punished by an award of both actual and punitive damages in amounts to be determined at trial.

163.    While the actions that were inflicted upon the Plaintiffs were carried out under color of law, they were arbitrary and extra-legal in nature because they constituted violations of universally accepted norms and standards prohibiting acts of torture on an absolute and unconditional basis.  As such, they were unlawful in

COMPLAINT FOR DAMAGES

nature, and under specific provisions of U.S. law. Including the TVPA and the Convention Against Torture and the statute implementing CAT in the U.S., and therefore cannot be claimed to be officially sanctioned and thereby covered by any claim of immunity based on the official position in government held by the Defendants.

164.    As a direct and proximate result of Defendants' conduct, Plaintiff has been restrained against his will in the Prey Sar prison in Cambodia, where he is being subjected on an ongoing basis to conditions of treatment that are cruel, inhuman and life threatening.

165.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will forever in the future suffer severe and permanent emotional distress and anxiety, permanent psychological distress and permanent mental impairment, and physical injuries.

166.    As a consequence of Defendants' actions, Plaintiff has suffered and will continue to suffer emotional, psychological, physical, and economic damages in an amount to be proven at trial.

**Seventh Claim for Relief**
**Loss of Consortium**
**(Claim of Plaintiff Jamie Meach Under Common Law)**

167.    Plaintiff incorporates herein by reference the averments contained in the preceding paragraphs as though fully set forth herein.

168.    As a further and direct proximate result of the acts of the Defendants, the enumerated Plaintiff, as the spouse of Mean Sovanarra, was caused to sustain a loss of services, comfort, society, and attentions in the past and future and suffered a loss of consortium to the detriment of the marital relationship and has suffered emotional, psychological, physical, and economic damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

COMPLAINT FOR DAMAGES

WHEREFORE, Plaintiffs Meach Sovannara, Jamie Meach and the minor children of Jamie Meach and Meach Sovannara, respectfully request, under applicable provisions of U.S. law and California tort law set out herein, that this Honorable Court:

1.   ASSERT and APPLY its jurisdiction over this matter, and proceed to consider the case on its merits;

2.   ENTER JUDGMENT against Defendants on each of the Causes of Action as set out above in this Complaint;

3.   AWARD to Plaintiffs general, special, and incidental and consequential damages in amounts to be established at trial according to proof;

4.   AWARD to Plaintiffs exemplary and punitive damages, according to proof, in light of the deliberate, grossly negligent, and intentionally abusive and highly repressive and damaging nature of the Defendant's conduct, as set forth herein, in an amount sufficient to punish and make an example of the Defendants given the horrendous nature of their actions in contravention of basic principles of international and U.S. law;

5.   AWARD to Plaintiffs treble damages pursuant to the provisions of 18 U.S.C. sections 2331, et seq., according to proof;

6.   Order Defendants to pay the costs of this Action, including reasonable attorneys' fees, as authorized and mandated under the U.S. laws set out in this Complaint, including 18 U.S.C. sections 2331, et seq., according to proof, and as allowed by law;

7.   AWARD pre-judgment and post-judgment interest to the extent allowed by law; and,

COMPLAINT FOR DAMAGES

8. AWARD such additional relief as shall appear just, appropriate and necessary to this Court given the circumstances and needs presented by this Case.

DATED:  April 8, 2016                              Respectfully submitted,


**HAYSBERT MOULTRIE, LLP**


By: _/s/ Nazareth M. Haysbert___

    Nazareth M. Haysbert
    James L. Moultrie, III


**STEERING COMMITTEE FOR CAMBODIA**

    Morton Sklar


*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated:        April 8, 2016                          Respectfully submitted,

**HAYSBERT MOULTRIE, LLP**


By: _/s/ Nazareth M. Haysbert_____
       Nazareth M. Haysbert
       James L. Moultrie, III


**STEERING COMMITTEE FOR CAMBODIA**

Morton Sklar

*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES