UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 1 of 17 |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) – FINAL RULING ON DEFENDANT HUN MANET'S MOTION TO DISMISS [24]**

**I. Background**

Meach Sovannara ("Sovannara"), Jamie Meach ("Jamie"), and their three minor children, S.M., J.M., and S.M. (the "minor children") (collectively, "Plaintiffs"), sue Hun Manet ("Manet") and the Royal Kingdom of Cambodia ("Cambodia") for: (1) torture through arbitrary, extra-legal, and long-term detention, under 28 U.S.C. § 1350; (2) acts of international terrorism, under 18 U.S.C. § 2331, *et seq.*; (3) intentional infliction of emotional distress; (4) assault; (5) battery; (6) false imprisonment; and (7) loss of consortium. *See generally* "Redacted Complaint," Docket No. 20. The causes of action arise from Sovannara's arrest, prosecution, and imprisonment in Cambodia for his participation in a political demonstration against the current Cambodian government.[1] *Id.* ¶¶ 2-3.

Sovannara is a dual citizen of the United States and Cambodia, and is a resident of Long Beach, California. *Id.* ¶ 9. Jamie is Sovannara's wife, and is also a dual citizen of the United States and Cambodia, as well as a resident of Long Beach. *Id.* ¶¶ 9-10. The minor children are citizens of the United States and currently reside with Jamie. *Id.* ¶ 11.

Manet is the oldest son of Cambodia's Prime Minister, Hun Sen, and holds several

---

[1] A complete summary of the factual allegations surrounding Sovannara's imprisonment in Cambodia can be found in the Court's previous rulings in this matter. *See, e.g.*, Docket Nos. 33, 61. For purposes of the instant Ruling, the Court summarizes only those allegations relevant to whether service of process on Manet was effected.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 2 of 17 |

official roles within Cambodia's government, including Deputy Chief of Staff of the Royal Cambodian Armed Forces, and Vice-Commander of the Prime Minister's Personal Bodyguard Unit. *Id.* ¶ 12. He also serves as head of the military police and security forces. *Id.* Although Manet is a citizen of Cambodia and currently resides in Cambodia, Plaintiffs allege that he has been a long-term resident of the United States, including when he attended and graduated from West Point Military Academy in the 1990s. *Id.* Plaintiffs allege that it was in Manet's "official capacities, under his authority and jurisdiction and control, that the acts of torture against Plaintiff Meach Sovannara that are the subject of this lawsuit took place." *Id.*

On July 29, 2016, Manet moved to dismiss the Complaint on the grounds that personal service on him was deficient, and also that there was no specific or general jurisdiction over him. *See* Motion to Dismiss ("MTD"), Docket No. 24. On September 1, 2016, the Court held a hearing and issued a Ruling in which it held that there was no specific jurisdiction over Manet. *See generally* Ruling, Docket No. 33 at pages 11-12 of 12. However, the Court noted that there were factual discrepancies regarding Plaintiffs' attempt to personally serve Manet at the La Luna Restaurant (the "Restaurant") in Long Beach on April 9, 2016, particularly with respect to: (1) whether Manet (or his agents) had a role in an attack that took place on Plaintiffs' process server, Paul Hayes ("Hayes"), outside of the Restaurant; (2) whether Manet was aware that he was being served with legal papers at the time of the attack; and (3) whether Manet was intentionally attempting to evade service. *Id.* at pages 9-10. The Court also explained that it was unclear whether Manet had sufficient contacts with California and/or the United States that would warrant the exercise of general or nationwide jurisdiction over him. *Id.* As such, the Court granted Plaintiffs' request for jurisdictional discovery into these issues and stayed its ruling on Manet's Motion to Dismiss pending the conclusion of discovery. *Id.*

On February 6, 2017, the Court issued a "Tentative Ruling" and held a hearing regarding the results of jurisdictional discovery. *See* Docket No. 61. After considering the submissions of the parties, the Court concluded that, *inter alia*, there was no general jurisdiction over Manet. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 3 of 17 |

at pages 15-17 of 20. With respect to service of process, the Court held the evidence submitted by Plaintiffs was insufficient to establish that Manet or any of his agents were aware that Hayes was attempting to serve Manet with legal documents, or that the person(s) who pushed Hayes was one of Manet's agents. *See* Docket No. 61 at pages 7-14. However, the Court indicated that it would re-evaluate its holding if Plaintiffs' could establish that the person(s) who blocked and pushed Hayes, thus preventing him from effectuating service of process (as depicted in the video and photographs of the incident), were Manet's agents or that Manet was sufficiently close-by at that point. *Id.* at page 14 n.14. The Court also emphasized that in any such re-evaluation, "there would still remain the issue as to the reason(s) for the bodyguard's actions in halting Hayes and pushing him back," because such a reaction would appear to be a normal bodyguard's response to prevent an oncoming individual from getting close to Manet. *Id.* The Court thus scheduled an evidentiary hearing at which Plaintiffs could present evidence as to these issues. *Id.*

On April 10, 2017, Plaintiffs submitted their Offer of Proof delineating the evidence they would provide at the hearing. *See* Offer of Proof, Docket No. 70. On April 13, 2017, the Court held the evidentiary hearing.[2] The Court now issues this final ruling on Manet's Motion to Dismiss, based on the evidence submitted by the parties during the various briefings and hearings on this matter, as well as the evidence presented at the April 13, 2017 proceeding.

## II. Legal Standard

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of process must be satisfied." *Omni Capital Int'l Ltd v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (citing *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946)). Insufficient service can result in dismissal under Federal Rule of Civil Procedure 12(b)(5). Where a defendant challenges service of process under Rule 12(b)(5), the

---

[2] At the request of Plaintiffs, the Court rescheduled the evidentiary hearing from March 30, 2017 to April 13, 2017,
   in order to allow Plaintiffs additional time to prepare evidence for the hearing. *See* Docket No. 69.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 4 of 17 |

plaintiff bears the burden of establishing that the service complied with Rule 4. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (citing *Butcher's Union Local No. 398 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986)).

Federal Rule of Civil Procedure 4(e) provides that an individual may be served in a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who reside there; or
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. Proc. 4(e).

The efforts of a process server attempting to effect service under Rule 4(e)(2)(A) must be "reasonably certain to inform those affected" of the action. *See Doe v. Qi*, 349 F.Supp.2d 1258, 1276 (N.D. Cal. 2004) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The Ninth Circuit has emphasized that "[s]o long as a party receives sufficient notice of the complaint, Rule 4 is to be 'liberally construed' to uphold service." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citing *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994)). "However, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.'" *Id.* (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).

"Sufficient service may be found where there is a good faith effort to comply with the requirements of Rule 4(e)(2) which has resulted in placement of the summons and complaint within the defendant's immediate proximity and further compliance with Rule 4(e)(2) is only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 5 of 17 |

prevented by the defendant's *knowing and intentional actions to evade service*." *Id.* at 1136 (emphasis added); *see also Qi*, 349 F.Supp.2d at 1307 ("Where a defendant attempts to avoid service[,] e.g.[,] by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant.").

Where a motion to dismiss based on jurisdictional grounds is "based on written materials rather than an evidentiary hearing, the plaintiff [must] make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation and citation omitted). "Although the plaintiff 'cannot simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.").

However, where a motion to dismiss raises factual issues that require an evidentiary hearing, the Plaintiffs' burden raises to a preponderance of the evidence. As the Ninth Circuit has emphasized, "[i]ssues of credibility or disputed issues of fact may require an evidentiary hearing." *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). "If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact . . . the district court has discretion to take evidence at a preliminary hearing in order to resolve the contested issues." *Spring Patents, Inc. v. Avon Rubber & Plastics, Inc.*, 183 F.Supp.2d 1198, 204 n.4 (D. Haw. 2001) (citing *Data Disc*, 557 F.2d at 1285); *see also Larsen v. Lauriel Invs., Inc.*, 161 F.Supp.2d 1029, 1046 (D. Ariz. 2001) (holding that "the court has discretion to rely on written submission or to hold a full evidentiary hearing"). "In this situation, when the plaintiff is put to his full

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 6 of 17 |

proof, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial." *Id.*; *see also Authentify Patent Co., LLC v. StrikeForce Techs., Inc.*, 39 F.Supp.3d 1135, 1142 (W.D. Wash. 2014) ("Where, as here, the district court has allowed the parties to conduct discovery on the jurisdictional issue and held an evidentiary hearing, the plaintiff must prove that jurisdiction exists by a preponderance of the evidence." (citing *Data Disc*, 557 F.2d at 1285)).

**III. Plaintiffs Have Failed to Establish that Service of Process on Manet Was Effected**

*A. Previous Evidence Submitted by the Parties*

As discussed in the Court's previous Rulings, Hayes attempted to personally serve Manet at the Restaurant on April 9, 2016, while Manet was in Long Beach as part of a goodwill tour. *See* MTD at 2:27-3:1. Although the parties disagree as to the specific details surrounding the event, according to Hayes, he went to the Restaurant, where Manet was scheduled to attend a dinner, with the intention of serving Manet outside of the Restaurant. *See* Aff. of Paul Hayes ("Hayes Aff.") ¶ 2, Docket No. 18-1. Members of the Long Beach Police Department ('LBPD") were present at the Restaurant, and Hayes introduced himself to one officer, showed his identification, and informed the officer that he was there to serve legal papers on Manet. *Id.* ¶ 4. The officer obtained approval from a sergeant and allowed Hayes to proceed. *Id.* Hayes further explains that:

> At approximately 8:30 p.m., General Manet approached the entrance of the restaurant. When he was five to ten feet away from me, I extended my left arm, with my left hand holding the papers out in his direction, to get the papers close to him and deliver them to him. I called out, 'General Manet, General Manet.' Just as I was about to complete the delivery of the documents into General Manet's hands, a bodyguard accompanying the General grabbed me from behind, picked me up, and violently threw me to the ground. The attack by the bodyguard prevented me from putting the documents into General Manet's hands. The documents dropped to the ground as a result of the violent attack on me. I was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 7 of 17 |

> unconscious for 30 seconds to a minute. When I came to, I was paralyzed and could not move my body . . . . An ambulance took me to the hospital, where I was admitted into the intensive care unit. I had serious injuries, including bruising on my spinal cord and abrasion on the top of my head. I spent five days in the hospital. My injuries may be permanent.

*Id.* ¶¶ 5-8.

Manet contends that no actual service took place because he never actually received the papers and was not informed that the papers proffered by Hayes were legal documents. *See* MTD at 5:9-17, Docket No. 24. In support, Manet submitted a declaration stating that he was not aware anyone had attempted to approach him and hand him legal papers until the day after the incident (*i.e.* April 10, 2016) when he was alerted about news articles describing the incident. *See* Decl. of Hun Manet ("Manet Decl.") ¶ 6, Docket No. 25. At that point, he allegedly learned that a process server had attempted to serve him with legal papers. *Id.* ¶ 7.

Plaintiffs, on the other hand, dispute whether Manet was unaware that the process server was attempting to serve him with legal papers. Plaintiffs argue that "[Manet] had arranged for a personal bodyguard unit to accompany him on his visit to the United States and to Long Beach in part because of his prior knowledge of the lawsuit and the likely service of process attempt." *See* Opp'n at 6:19-27, Docket No. 29. In support, Plaintiffs contend that "reports were widely circulated in the media prior to [Manet']s visit to Long Beach about the lawsuit that was being filed against him, and [Manet] may well have had prior notice of these reports especially as the subject of his visit to Long Beach had become very controversial, and he had received a substantial amount of media coverage and public criticism." *Id.* at 8:4-14. Plaintiffs further contend that it was at "the exact point of delivery of service to [Manet] that the purposeful and most likely pre-planned interference with the delivery of service was carried out by [Manet's] personal bodyguards in an extremely violent and damaging way." *Id.* at 9:11-24.

In light of the factual discrepancies surrounding Hayes' service of process attempt, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 8 of 17 |

Court granted Plaintiffs' request for jurisdictional discovery in order to determine "what knowledge and understanding [Manet] actually had about what was taking place in connection with the attack on the process server, and the fact that he was the subject of judicial proceedings in the present case." *See* Opp'n at 6:8-18.

After jurisdictional discovery concluded, the parties submitted supplemental briefs, and Plaintiffs submitted photographic and video evidence which Plaintiffs argued established that "Manet's agents made a direct and forceful attempt to interrupt, interfere with, and prevent completion of service of process, in violation of federal and state criminal law that make assault on a process server a violation of law." *See* Pl.'s Br. at 1:12-24, Docket No. 54. Plaintiffs contended that this evidence established the following facts: (1) Hayes identified himself to Long Beach Police Department officers upon arrival at the Restaurant and obtained their approval for carrying out service of process at the site, which allegedly "was done openly, within view of members of [] Manet's security team, also present at the site"; (2) there were three types of security personnel at the Restaurant tasked with providing protection for Manet, including security officers hired by the Restaurant, five security officials accompanying Manet from Cambodia, and more than two dozen of the Cambodian American community voluntarily providing security services for Manet;[3] (3) Hayes was present at the scene for three hours before the incident, and, because he had informed the Long Beach Police Department officers of his intention to serve Manet and displayed court documents, "it is reasonable to assume that []

---

[3] As to the alleged three types of security personnel at the Restaurant at the time of the incident, the Court indicated in its February 6, 2017 Ruling that it is unclear whether all three of them can be considered agents of Manet such that their actions can to attributed to him. *See* Docket No. 61 at page 9 n.3. While certainly the five security officials accompanying Manet from Cambodia can be held to be his agents, the Court held that it could not see any reason to find the security officers hired by the Restaurant or the two dozen members of the Cambodian American community to be similarly situated. *Id.* Plaintiffs failed to address this issue at the evidentiary hearing, but, in any event, the issue is not relevant to this Ruling, because Plaintiffs failed to establish that the individuals who purportedly interdicted with Hayes were members of *any* of the types of security personnel at the Restaurant on April 9, 2016.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 9 of 17 |

Manet's security team, who also were present during that period, more than likely were aware of the purpose of his presence"; (4) when Manet arrived, Hayes approached Manet with his hand outstretched "so that his purpose was clearly visible to Manet's security team members"; (5) that Hayes came within 5 to 10 feet of Manet "with the court papers clearly visible in the video and still photos in his outstretched hand," when Manet's security team forcibly grabbed him and threw him "more than 20 feet;" (6) although the court documents never reached Manet's hands, the visual images confirm they were at the point of being delivered when Hayes was attacked. *Id.* at 11:4-13:6.

Defendants, on the other hand, argued that service was inadequate because Hayes at no point attempted to clearly communicate his intent to serve legal documents.[4] *See* Def.'s Br. at 2:21-3:6, Docket No. 55. Defendants contended that Manet was unaware that a lawsuit had been filed against him at the time Plaintiffs attempted service, which is evidenced not only by the fact that the lawsuit had only been filed the day before the service attempt, but also by Manet's declaration stating that he was unaware a lawsuit had been filed against him, never attempted to evade service, and never asked anyone to attack Hayes. *Id.* at 4:13-22; Manet Decl. ¶¶ 7, 11. Defendants further pointed out that the photographs submitted by Plaintiffs do not provide any evidence that the man who pushed Hayes worked for Manet or that Manet or any of his security team was aware that Hayes was attempting to serve Manet.[5] *See* Def.'s Br. at 5:2-6:26.

After reviewing the exhibits submitted by Plaintiffs, *see* Decl. of Morton Skylar ("Skylar Decl.") Exs. A-D, Docket Nos. 54-2-5, as well as the video evidence subsequently lodged with the Court, *see* Docket Nos. 58-59, the Court agreed with Defendants that there was insufficient

---

[4] It is noted that in his declaration, Hayes only stated that, as he was approaching Manet, he held out papers in his left hand and shouted "General Manet, General Manet." Hayes Affidavit at ¶ 5, Docket No. 18-1.

[5] While Hayes states that the person who grabbed him was "a bodyguard accompanying the General" (Hayes Affidavit at ¶ 6), it is unclear how or why Hayes formed the conclusion that the person who grabbed him was one of Manet's bodyguards rather than one of the five security officers hired by the Restaurant, one of the two dozen Cambodian American community volunteers, or someone unassociated with any of the above parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 10 of 17 |

evidence indicating that Manet or any of his agents were aware that Hayes was attempting to serve Manet, or that the person(s) who pushed Hayes was one of Manet's agents.[6] *See* Docket No. 61. The exhibits originally submitted with Plaintiffs' Supplemental Brief consisted of: (1) news articles discussing Manet's planned visit to Long Beach and reporting on the subsequent attack on Hayes, *see* Skylar Decl. Ex. A; (2) email communications between the Long Beach Police Department and Hayes regarding Hayes' public request for surveillance related to the incident, *see* Skylar Decl. Ex. B; and (3) photographs depicting the parking lot of the Restaurant, which did not show any individuals or depict the at-issue events, *see* Skylar Decl. Ex. C. The Court held that none of those exhibits provided any concrete evidence indicating that Manet or his agents were aware that Hayes was trying to serve Manet with legal documents.

Similarly, the Court held that the video evidence of the event (without more) did not support Plaintiffs' contentions. Plaintiffs lodged two videos with the Court: (1) surveillance footage from Long Beach Police Department cameras positioned in various locations around the Restaurant on the date of the incident; and (2) the aforementioned disc labelled "Still Photos from La Lune Video," footnote 6, *supra*. *See* Pl.'s Supp'l Lodging, Docket Nos. 58-59. The Court explained that the video footage from the Long Beach Police Department surveillance cameras were all taken from very distant viewpoints, and do not even appear to show the relevant incident. Indeed, Plaintiffs appeared to concede this, stating that "[a]lthough the police surveillance videos are nowhere near as close-up or as clear as the witness video, the images they contain are important because they provide additional documentation of the authenticity of the witness video." *See* Pl.'s Supp'l Lodging at 2:23-25, Docket No. 59.

---

[6] Because of their central importance to resolving the issue, the Court reviewed at least ten times the relevant portions of the video of the attempted service by Hayes. *See* dvd disc labelled "Still Photos from La Lune Video" (which includes a number of photographs and videos) that was lodged with the Court on January 24, 2017. Docket No. 59. In the video of the attempted service (which is labelled "Service of Process video.MOV," henceforth "service video"), the period of primary interest starts at the "37" seconds mark and proceeds to the "47" seconds mark. Additionally, the dvd contains 17 photographs (marked as "01.jpg" to "17.jpg") which were taken from that portion of the video.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 11 of 17 |

The set of witness images from the second video depict a large crowd gathering outside the Restaurant and show an individual, whom Plaintiffs claim is Hayes, waiting at the back of the crowd gathered in front of the Restaurant.  *See* Pl.'s Supp'l Lodging, Docket No. 58.  The video depicts Hayes approaching from the back of the crowd with a manila envelope raised above his head, and, shortly thereafter, falling backwards away from the crowd with the envelope still in his hand.  The Court explained that it is entirely unclear from the images who pushed Hayes, nor is it clear where Manet (or his bodyguard/agents) was located at that point in time.

Moreover, the Court held that Hayes' own declaration and deposition testimony indicate that he never communicated his intent to serve court documents to Manet or his agents.  Hayes' Declaration states that he only called out "General Manet, General Manet," before he was pushed by someone in the crowd.  *See* Hayes Decl. ¶¶ 5-6, Docket No. 18-1.  Additionally, at his deposition in this matter, Hayes testified about the incident as follows:

> Q:  How long before April 9, 2016, did you get this assignment?
> A (Hayes):  It might have been – I have to double check, but it's very possible it was the day before.  I believe it was the day before, meaning April 8th, I believe, I got the assignment.
> Q:  And who did you tell about the assignment when you got it?
> A:  Who did I tell about the assignment?  I don't recall telling anyone.  I mean, I received the assignment, and I – then I worked it.  That's all I recall.
> Q:  Are you aware of anybody who alerted General Manet about the lawsuit that's at issue here today prior to your attempt to serve him on April 9th?
> . . .
> A:  I wasn't aware of anything.
> Q:  Shortly before you tried to serve General Manet, you did tell the Long Beach Police Department you were going to try to serve, correct?
> A:  Yes.  I did on two different occasions.
> Q:  What were the two occasions?
> A:  Okay. Well, there [sic] were a couple hours apart.  I can't remember the specific time.  There was a – the first time was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 16-2436-GW(JCx) | Date | April 17, 2017 |
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 12 of 17 |

several hours before General Manet arrived. There were a group of four Long Beach Police Department officers standing in the line.

I walked over to them. I showed them my subpoena and identification and explained why I was there, and I wanted them to know what I was doing so that no one would be alarmed as I would eventually approach General Manet.

And – oh, and then, so that was the first one. Then it was getting more crowded, and it was apparent that things were about to happen. The crowd was getting a bit more frenetic.

And I observed – what appeared to be a Cambodian Long Peach Police Officer. So this is a couple hours after the first notification that I just explained.

I did the same thing. And he said, "Hold on, let me talk to my supervisor."

I walked – I watched him walk to the opposite side where protestors were lined up and pointed at me and looked at me and waved, and he came back.

He said, "Okay fine. You're good to go," because I was on the – I was standing in the area where – in front of the restaurant away from all the protestors.

. . . .

Q: Other than the police officers, did you tell anybody else that you were going to try to serve General Manet?

. . . .

A: No. Oh, wait a minute, wait a minute. I remember just talking to – when I first got there, talking to the protestors and just asking them, you know, trying to get information from them.

And you know, those are the only other people that I talked to, trying to find out, you know, if they knew when he was showing up, how he would show up, and you know, most of them thought he was going to show up, so basically, I was trying to get information.

. . . .

Q: Are you aware of the Long Beach Police Department telling General Manet that you were going to try to serve him?
A: **Absolutely not. I don't think that was even possible, especially when they blew me off, yeah.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|

| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 13 of 17 |
|---|---|---|---|

> . . . .
> Q: Do you think that would have made your job more difficult if they had told him that you were going to try to serve him with process?
> A: I don't think it would have made any difference considering how the events unfolded. I don't think it would have made any difference.
> Q: Why is that?
> A: Because it was difficult to begin with.

*See* Decl. of John Purcell Ex. A at 21-28, Docket No. 55-2 (emphasis added). The Court explained that Hayes' own testimony indicates that neither he, nor the LBPD, ever informed Manet or his agents that Hayes was attempting to serve legal papers on Manet.

Finally, the Court pointed out that the circumstances of this case are factually on point with a similar case, which held that service had not been properly effected on a foreign Cardinal visiting the United States. *See Weiss v. Glemp*, 792 F.Supp. 215 (S.D.N.Y. 1992). In *Weiss*, the Cardinal was informed that when he arrived in the United States, he would be served with a complaint and required to appear in court on defamation charges. *Id.* at 217. While in the United States (specifically, in Albany, New York), the Cardinal was walking in a procession towards the Cathedral of the Immaculate Conception when a person (subsequently identified as a process server) approached him and tried to give him certain documents (later determined to be a copy of a summons and complaint). The process server's attempt to hand the Cardinal the papers was foiled when a man standing next to the Cardinal deflected the papers before they reached him. *Id.* at 222. The court held that service was inadequate, because there was no indication that the Cardinal: (1) had actually received the papers, (2) was trying to evade service or (3) was even aware that the papers were legal documents. The court pointed out that the papers proffered by the process server could easily have been a petition, leaflet, protest, or other non-legal document. *Id.* at 225. It was emphasized that the process server "at no time made it clear she was serving legal process. She did make it clear by her actions that she was intent on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 14 of 17 |

giving something to [the Cardinal]. She did not make it clear to other individuals who were present but unconnected with her that those papers were legal process, nor did she make it clear she was an officer of the court." *Id.* at 224; *see also Ohio Farmers Ins. Co. v. Wagner*, No. 1:13-cv-1553, 2013 WL 5739756, at *2 (N.D. Ohio Oct. 22, 2013) ("The process server must identify the nature of the papers to the individual she is serving."); *cf. Qi*, 349 F.Supp.2d at 1274 (finding that process server sufficiently identified nature of the documents by holding out papers to foreign official and stating, "You can accept them or you do not have to, but you have been formally served by the U.S. District Court of Northern California.").

As explained in the Court's February 6, 2017 Ruling, here, as in *Weiss*, it is clear that Hayes never identified the papers in his hand as legal documents. *See* Docket No. 61. Nor, after the conclusion of jurisdictional discovery, was there any actual evidence that Manet or his agents were aware Hayes was attempting to serve legal documents. The Court thus tentatively granted Manet's Motion to Dismiss subject to one last opportunity to present evidence of effective service.

### B. *Evidence Presented at Evidentiary Hearing*

At the April 13, 2017 evidentiary hearing, Plaintiffs presented three witnesses: two individuals named San Kim Hong ("Hong") and Sokhavy Nuon ("Nuon"), as well as LBPD Detective David Ternullo ("Detective Ternullo"). In their Offer of Proof (Docket No. 70), Plaintiffs asserted that Hong and Nuon had been identified as the principal perpetrators of the attack on Hayes, and that both Hong and Nuon were performing security services for Manet during the incident.[7] *See* Offer of Proof at 3:4-25.

At the evidentiary hearing, Hong testified that he was present at the Restaurant during the relevant time frame on April 9, 2016, and that he had gone to the Restaurant to celebrate the

---

[7] At the hearing, Plaintiffs did not present any live testimony from a witness who identified either Hong or Nuon as being involved in the April 9, 2016 scuffle with Hayes or identified them as being in Photo 11. The written references previously submitted by the Plaintiffs were all solely based on inadmissible hearsay.

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk JG |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 15 of 17 |

Cambodian New Year. When presented with the still image that appears to depict Hayes being interfered with by two unidentified individuals, *see* Photo 11, Pl.'s Supp'l Lodging, Docket No. 58 ("Photo 11"), Hong testified that he is not depicted in the photograph. Hong explained that at all times during the relevant time frame, he was at least 50 feet away from Manet, and was standing to the left of the Restaurant entrance, in front of a laundromat. He explained that he is a retail store manager in Hawthorne, California, and that he has never worked for Manet or the government of Cambodia, and has never met Manet. When presented with two photographs purportedly obtained from Hong's Facebook page, *see* Evidentiary Hearing Exs. A-1 and A-2, Hong identified himself in each photo. However, as discussed *infra*, Plaintiffs' have not provided any legitimate basis for the Court to find that Hong is one of the two individuals depicted as interfering with Hayes in the admitted photograph based solely on a comparison between Hong's Facebook items and Photo 11.[8]

      Similarly, Nuon testified that: (1) he was present at the Restaurant during the relevant time frame on April 9, 2016; (2) he had gone to the Restaurant to celebrate the Cambodian New Year; and (3) he was responsible for welcoming guests inside the Restaurant and seating them at the various tables. When presented with Photo 11, Nuon testified that he is not one of the two individuals interacting with Hayes.[9] He stated that when he arrived at the Restaurant at about 6:30 p.m., he was initially barred from entry for about a half hour. He also emphasized that he had no role in providing Manet with security at the Restaurant, and that his role was limited welcoming guests. Nuon stated that he had been tasked with this role by a "Committee" that was in charge of organizing the event, and that he had attended one Committee meeting, but that

---

[8] After examining Photo 11 and Hong's countenance at the hearing, the Court does not find that Plaintiffs have established that Hong is the person shown in Photo 11 with the outstretched arm (or that he is otherwise depicted therein). The faces in Photo 11 are far too blurry.

[9] After examining Photo 11 and Nuon's countenance at the hearing, the Court does not find that Plaintiffs have established that Nuon is the person shown in Photo 11 apparently pushing Hayes (or that he is otherwise depicted therein).

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk JG |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 16 of 17 |

security was not discussed at that meeting while he was present.

Nuon testified that, at all relevant times during the incident, he was inside the Restaurant, and that he did not witness the attack on Hayes. At some point, he was near the front of the Restaurant when the doors were opened and he saw Manet enter. Simultaneously, he was aware that someone had set off pepper spray outside which affected both Manet and himself. Nuon observed that Manet appeared to be dazed or confused so he pulled Manet into the Restaurant.

Nuon further testified that: (1) he has never provided security services for Manet in the past, and (2) he runs a donut shop in Long Beach. When presented with two images from his Facebook page, *see* Evidentiary Hearing Exs. B-1 and B-2, Nuon confirmed that he was one of the individuals in each photo. One of the photographs shows Nuon with Manet, and he explained that because he helped in arranging the celebration, he was able to take a picture with Manet. Additionally, Nuon testified that he had met Manet on one previous occasion in Cambodia after he had contributed money to the building of a school in Areng.

Detective Termulio testified that the LBPD currently has an ongoing investigation into the attack on Hayes, but has yet to identify the perpetrators. Termulio testified that the LBPD does not have a specific unit that deals with facial recognition technology, but that Termulio is "looking into" the possibility of being able to use such technology to identify the two individuals depicted in Photo 11. Termulio did not state that the LBPD has identified either Hong or Nuon as being involved with the altercation with Hayes on April 9, 2016.

Based on the evidence presented at the April 13, 2017 hearing and the other proceedings on the motion to dismiss, the Court finds that Plaintiffs' have failed to provide any evidence that either Manet or any of his agents played a role in the attack on Hayes, or that either Manet or his agents were aware that Hayes was attempting to serve legal papers on Manet on the evening of April 9, 2016. Indeed, when questioned at the hearing as to what evidence supported Plaintiffs' position, Plaintiffs' counsel only referenced their opinion that Nuon and Hong look similar to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2436-GW(JCx)** | Date | April 17, 2017 |
|---|---|---|---|
| Title | *Meach Sovannara, et al. v. Hun Manet, et al.* | Page | 17 of 17 |

two individuals depicted in Photo 11.[10] Plaintiffs have failed to present any actual evidence substantiating their assertions during the three opportunities the Court has provided. Moreover, both Nuon and Hong testified that they were not performing security for Manet at the Restaurant on April 9, 2016; that they had not provided security services for Manet in the past; and that they were unaware that Hayes was attempting to serve legal papers on Manet. Thus, even assuming Nuon and Hong were properly identified as the individuals in Photo 11, there is simply no evidence indicating that they were acting on behalf of Manet.

In sum, Plaintiffs' have failed to provide any evidence indicating that Manet was attempting to evade service or was aware that the papers in Hayes' hand were legal documents, and therefore have failed to meet their burden of establishing that service of process on Manet was effected. *See Weiss*, 792 F.Supp. 218-25 (finding service inadequate where papers were deflected before they reached the defendant, emphasizing that the process server at no time made clear she was serving legal process, and there was no indication the defendant was attempting to evade service or was aware that the papers were legal documents); *see also Ohio Farmers Ins. Co. v. Wagner*, No. 1:13-cv-1553, 2013 WL 5739756, at *2 (N.D. Ohio Oct. 22, 2013) ("The process server must identify the nature of the papers to the individual she is serving.").

**IV. Conclusion**

In sum and for the reasons stated above and in the Court's prior rulings (*see* Docket Nos. 33, 61), the Court GRANTS Defendant Manet's Motion to Dismiss and dismisses Manet from this action.

The Court sets a status conference for May 1, 2017 at 8:30 a.m. Parties will file a joint status report as to Plaintiff's Motion to Amend Complaint [48] by noon on April 27, 2017.

---

[10] The Court notes that Photo 11 is significantly blurred, making it nearly impossible to discern distinguishing features on either of the two individuals that Plaintiffs contend are the perpetrators of the attack on Hayes.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk JG |
|---|---|---|